### Appeal of OLD COLONY RAILROAD CO.     Docket No. 1024.

Where a railroad corporation holds 44 per cent of the shares of stock and is lessee under a ninety-nine year lease of all the properties of another railroad corporation, *held*, that such circumstances do not create such a control of "substantially all of the stock" of the second corporation as to entitle it to claim affiliation for the purpose of filing consolidated returns.

Submitted February 5, 1925; decided April 28, 1925.

*George E. Holmes, Esq.*, for the taxpayer.
*George K. Bowden, Esq.*, for the Commissioner.

Before Graupner, Lansdon, and Littleton.

This appeal involves a deficiency of $828.82 for the year 1918. The deficiency arises from the refusal of the Commissioner to allow a

consolidated return of the taxpayer and the New York, New Haven & Hartford Railroad, which the taxpayer claimed to be affiliated under the provisions of section 240 of the Revenue Act of 1918. From the evidence and stipulations the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a corporation organized under the laws of Massachusetts, with its principal office in the City of Boston in said State.

2. The taxpayer was incorporated March 27, 1872, by chapter 143 of the Massachusetts Acts and Resolves of that year. By said Act the Old Colony & Newport Railway Co., and the Cape Cod Railroad Co. were authorized to unite and form one corporation under the name of Old Colony Railroad Co. The Act was accepted by the stockholders of each company April 12, 1872. By the Act of 1872 and the several acts supplementary thereto and amendatory thereof, the taxpayer was authorized to acquire, construct, and operate a railroad along the routes specified in such Acts.

3. Between 1872 and March 1, 1893, the taxpayer operated a system of railroads consisting of main and branch lines extending from Boston to Provincetown, Mass.; from Lowell and Fitchburg to New Bedford, Mass., and Newport, R. I.

4. Between 1888 and March 1, 1893, the taxpayer operated a line of railroads between Boston, Mass., and Providence, R. I., under lease. In pursuance of the authority granted to it by said Acts, the taxpayer acquired, constructed and operated various railroad lines and properties along the routes specified in the Acts and was in possession of and operated the same on March 1, 1893.

5. On and prior to March 1, 1893, the New York, New Haven & Hartford Railroad Co. was a railroad corporation organized and existing under the laws of Connecticut and Massachusetts and operated a railroad in the States of Connecticut and Massachusetts. Between the years 1893 and 1925, and including the taxable year 1918, the New York, New Haven & Hartford Railroad Co. owned and operated a railroad system throughout the States of Massachusetts, Rhode Island, Connecticut, and New York, consisting of railroads owned directly by it, railroads all of whose stock was owned by it, and railroads which it or its subsidiaries were managing and operating under lease.

6. On or about March 1, 1893, the taxpayer leased its lines and property to the New York, New Haven & Hartford Railroad Co. by a lease, dated March 1, 1893, in words and figures as follows:

The OLD COLONY RAILROAD COMPANY (hereinafter called the lessor), hereby demises and lets, for the term of ninety-nine years beginning the first day of March, 1893, unto THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY (hereinafter called the lessee), and to its successors and assigns, both the lessor and lessee being corporations existing under the laws of the Commonwealth of Massachusetts and whose roads connect with each other, all and singular its railroads and property of every description, whether within its location or not, including all rights, franchises, easements, privileges and appurtenances thereunto belonging, together with the right to demand and receive for the lessee's own use all tolls, rents, revenues, income and profits of the demised premises, including also therein all the right, title and interest of the lessor in and to any and all railroads operated by it, under lease or otherwise, and in or to any stock and securities of other cor-

porations owned by it, or held by, or for it, all dividends thereon, and the right of voting on the same, and in and to all contracts and obligations of or with other railroads, corporations or individuals, and all income advantages and benefits to be derived therefrom, hereby assigning and transferring unto the lessee, under the terms and provisions of this lease, and for the purposes thereof, and subject to all obligations and incumbrances thereon, all its railroad, property, franchises and assets of every description, however described and wherever situated, except the corporate seal, the stockholders' and directors' record books, and the transfer and stock books, to which the lessee may have access at reasonable times.

And the lessor covenants with the lessee that it will suffer and permit the lessee, it keeping all the covenants on its part as herein contained, to occupy, possess and enjoy said premises, property, rights, franchises and privileges during the term aforesaid without hindrance or molestation.

And the lessor hereby makes, constitutes and appoints the lessee its agent during the term of this lease to operate all its leased railroads and property, the lessee herein to do and perform as such agent all acts with reference thereto incumbent by law or by contract upon the lessor herein and in consideration thereof to receive the income and profit arising from such operation; and the lessor hereby agrees, as soon as it legally may, to make from time to time proper and complete assignments to the lessee of all leasehold rights of the lessor.

And the lessor covenants that during the continuance of this lease it will maintain its corporate organization, the lessee paying all reasonable and proper expenses thereof, and, for that purpose will hold all necessary meetings, elect all necessary officers and make all necessary records, reports, reissues of stock certificates and transfers and registrations of bonds; and that it will, from time to time, whenever requested by the lessee, take real estate for the convenient operation of said railroads, the lessee, however, advancing therefor all damages and expenses; and that the lessee may use the lessor's name in bringing or defending any suits or proceedings so far as it is or may be necessary for the protection or enjoyment of said demised premises, property, rights, franchises and privileges, or for the acquisition of additional real estate, but at the sole expense of the lessee, saving the lessor harmless from all loss, costs or damages thereby accruing.

And the lessor covenants that, for the purpose of making permanent improvements upon the property hereby demised and for the purpose of discharging its indebtedness, it will at the request of the lessee make such lawful issue, and reissue in renewal, of bonds or of stock, or both, as shall from time to time be necessary and proper to be issued; and that at the request of the lessee it will execute mortgages of said demised premises or any part thereof to secure the payment of the principal and interest of such bonds; and that it will not issue any stock or bonds, or create any indebtedness or lien upon said demised premises, or property, except under and in accordance with the directions, or by the previous written consent, of the lessee.

And the lessor hereby makes, constitutes and appoints the lessee its true and sufficient and lawful attorney from time to time, to bargain and sell, with the assent of the directors of the lessor, lands and structures of the lessor on such terms as to the lessee shall seem meet, and hereby authorizes the lessee in the name of the lessor to make, execute, acknowledge and deliver good and sufficient deeds and conveyances of all the right, title and interest of the lessor so bargained and sold in and to the same; the lessor agreeing, whenever thereto requested by the lessee, and upon reasonable notice, to affix its corporate seal to such deeds and conveyances; and the lessee covenants and agrees that other lands and structures of equal value shall be conveyed to the lessor in lieu of any lands or structures so sold and conveyed, and that if the lessee shall under any power herein conferred sell or abandon the lands and structures now constituting the terminals leased to the lessor in the city of Providence, the lessee shall acquire, construct and convey to the lessor of the lessor herein new terminals of equal value and sufficient for its business, and to be such as will conform to the agreements of the lease of the Boston and Providence Railroad Corporation to the lessor; all property so acquired to become a part of the demised premises.

And the lessor covenants that it will at any time or times hereafter upon the reasonable request of the lessee, make, do, and execute, or cause, or procure to be made, done and executed all and every such further and other lawful and reasonable acts, conveyances, transfers, assignments and assurances

in the law, for the better and more effectually vesting and confirming the premises and property hereby leased, or intended so to be, in and to the lessee, as by the lessee shall be reasonably devised, advised or required.

And the lessee covenants to pay as rent hereunder on the 30th day of June, 1893, a sum equal to a dividend of two dollars and thirty-three and one-third cents upon each share of the capital stock of the lessor then outstanding; and thereafter, except as hereinafter provided, sums equal to dividends at the rate of seven per cent per annum, payable quarterly, upon said capital stock then from time to time outstanding.

And the lessee further covenants that as soon as it lawfully may, it will prior to January first, 1900, issue in the proportion of nine shares of its capital stock in exchange for ten shares of the capital stock of the lessor, then outstanding, and will give notice thereof by mail to each stockholder of the lessor and thereafter, and until six months after said exchange shall be offered to the stockholders of the lessor, upon the assignment to the lessee of ten shares of the capital stock of the lessor or any multiple thereof, and the surrender of the certificate or certificates therefor, the lessee will, whenever its stock transfer books are open, issue to the owner of said shares in exchange therefor, a certificate for the proportionate number as above provided, of shares of the capital stock of the lessee.

And the lessee covenants that in case it shall be unable to perform the covenants contained in the preceding paragraph prior to the first day of July, 1893, it will thereafter, and between said first day of July, and six months after the date when it shall be able to perform said covenants, pay (in lieu of said sums equal to dividends at the rate of seven per cent per annum) a sum on each share of the outstanding capital stock from time to time of the lessor equal to nine-tenths of such dividends as the lessee shall pay upon each share of its own capital stock and will secure to the stockholders of the lessor the same proportion of such pecuniary privileges as the lessee shall give upon each share of its own capital stock.

And the lessee further covenants to provide for the payment in the manner hereinbefore mentioned, of the principal of all funded indebtedness for the payment of which the lessor may be legally holden as the same shall from time to time mature, and to assume and pay all the other obligations of the lessor of every name and nature as the same shall from time to time fall due, and to keep and perform all and singular the contracts relating to said demised premises and property now in force and binding on the lessor whether arising under leases or otherwise, and as to property leased to the lessor, the lessee shall be subject to the leases under which such property is held.

And the lessee further covenants to pay, during each year of said terms, all taxes, rates, charges and assessments, ordinary and extraordinary, which may be lawfully imposed or assessed in any way upon the lessor or lessee with reference to the premises and property hereby demised, the capital stock of the lessor, its indebtedness, franchises and revenues or said rental; said payments to be made to the authority or treasurer entitled by law to receive the same, whether Federal, State, or municipal, so that said lessor shall be saved harmless, during the continuance of this lease from any tax, assessment or charge under laws or proceedings made or authorized by the United States or any State or municipality.

PROVIDED, That (1) if the lessee shall at any time fail to pay the interest on the lessor's bonded indebtedness when the same falls due, or (2) if the lessee shall fail for thirty days to make any quarterly payment of rent as above stipulated, or (3) if the lessee shall fail to keep or perform any other of its covenants or agreements in this lease contained, and such default shall continue for six months after written notice thereof shall have been given by the lessor to the lessee; then, and in either of said events, this lease shall expire and terminate, at the option of the lessor, and the lessor may thereupon re-enter upon the demised premises and the same have and possess as of its former estate without prejudice to its right of action for arrears of rent or breach of covenant.

And the lessee covenants that it will at its own cost and expense during the continuance of this lease, furnish and provide all such books, forms and papers, and do and perform all such acts and things as may be required for the proper distribution of dividends, payment of interest and for the issue, record and transfer of the stock of the lessor, and for the issue, registration and transfer of any bonds herein referred to, as a part of the expenses of organization.

And the lessee covenants that it will operate the lessor's said railroads and the leased railroads of the lessor as required by all legal enactments from time to time in force, and furnish all equipment, in addition to that hereby demised, which may be necessary for such operation, and maintain said demised premises and property during said term in good condition and up to its present standard as a railroad; and that it will make all additions, alterations, improvements and betterments which may be necessary or proper with reference to the premises and property hereby leased; and that all lands, structures, improvements, betterments and renewals so added to or made upon the real estate hereby demised shall become the property of the lessor, and a part of the demised premises; and that at the expiration of this lease, whether by lapse of time or otherwise, it will deliver to the lessor possession of said demised premises, and leased properties, rights, franchises and privileges, together with any and all additions and substitutions which may have been made thereto as aforesaid, and will also return or deliver, in lieu of the personal property set out in the inventory hereinafter provided to be made, the same or other personal property of similar character, value and uses, and appropriate for the operation of the lessor's railroads.

And the lessee covenants that it will save the lessor harmless from all suits, costs, damages and expenses by reason of any act or omission of the lessee in the use of said demised premises, under this lease; and will, at its own expense, defend all suits pending or brought against the lessor and pay the judgments therein when demanded on final process; and that it will during said term make all returns required by the laws of any State, or of the United States, in relation to the property hereby leased, to any public officer, or other legal authority; and that, should any returns be required by law of the lessor the lessee will furnish, on demand, so far as it has the means, all information necessary therefor.

And the parties hereto mutually agree that an inventory and appraisal of all the personal property hereby demised, including stock and securities held by the lessor, shall be made as of the first day of March, 1893, by representatives of the lessor and lessee, or in case of disagreement as to any item or items by a third person to be agreed upon by the lessor and lessee.

Nothing herein contained shall prevent the lessor and lessee from modifying, changing, amending, annulling or cancelling this lease by mutual agreement.

It is understood that this lease is made subject to approval by the stockholders of said parties respectively as required by law.

IN WITNESS WHEREOF, the parties hereto, under the authority and direction of their respective Boards of Directors have caused this instrument to be signed by their respective Presidents and their corporate seals to be hereto affixed, this fifteenth day of February, A. D., 1893.

[SEAL]　　　　　　　　　　　　OLD COLONY RAILROAD COMPANY
　　　　　　　　　　　　By CHARLES F. CHOATE
　　　　　　　　　　　　　　　　　　　　　　*President*

[SEAL]　　　　　　　　　　　　THE NEW YORK, NEW HAVEN AND
　　　　　　　　　　　　　　　HARTFORD RAILROAD COMPANY
　　　　　　　　　　　　By CHARLES P. CLARK
　　　　　　　　　　　　　　　　　　　　　　*President*

Witness: E. G. PARKER
　　　　　J. G. PARKER　　　　　　　　　　　　. (Acknowledgment)

7. This lease was executed in pursuance of the authorization of the stockholders of the taxpayer granted February 28, 1893, and of the authorization of the stockholders of the New York, New Haven & Hartford Railroad Co. granted April 4, 1893, and was approved and confirmed by Act of the Rhode Island Legislature, passed April 25, 1893, January Session, 1893, page 380, and by the Legislature of the State of Connecticut by an Act of June 14, 1889, Special Laws, vol. 10, page 1298, as amended by the Act of March 2, 1893, Special Laws, vol. 11, page 32, which amended the charter of the New York, New Haven & Hartford Railroad so that it could exchange its stock for stock of any company wholly or partly in an adjoining State whose property it might hold by lease. This lease was also made under the

General Railroad Laws of Massachusetts, Public Statutes, chapter 112, sections 220 and 221.

8. Subsequent to March 1, 1893, and during the year 1918 the lease was in full force and effect, and by virtue thereof the railroad system of the taxpayer was operated as an integral part of the New York, New Haven & Hartford Railroad Co.'s railroad system.

9. During all of the year 1918 the New York, New Haven & Hartford Railroad Co. owned 98,122 shares and no more of the 222,940 shares of the common stock of the taxpayer, that amount being 44 per cent of the outstanding common stock. Each share of the common stock of the taxpayer was entitled to one vote, and there was no other class of stock outstanding. According to the official return of the taxpayer to the Public Service Commission of Massachusetts for the year 1919 the holdings of the twenty stockholders who had the highest voting powers in the taxpayer corporation were as follows:

| Name. | Shares. |
| --- | --- |
| Boston Insurance Co | 500 |
| Burbank Hospital | 500 |
| Philip Dexter, trustee | 615 |
| Pauline S. Fenno et al., trustees | 904 |
| Holyoke Water Power Co | 500 |
| New England Trust Co., trustee | 563 |
| N. Y., N. H. & H. R. R. Co | 98,122 |
| William Phillips | 500 |
| Providence Inst. for Savings | 500 |
| William L. Richardson | 500 |
| F. S. Stanley et al., trustees | 500 |
| State Mutual Fire Insurance Co | 500 |
| Trustees under will of Sarah E. Lawrence | 801 |
| Estate of Thomas E. Proctor, trustees | 400 |
| United States Tr. Co. of N. Y | 4,200 |
| F. C. Welch et al., trustees | 544 |
| F. C. Welch et al., trustees | 708 |
| George R. White | 1,050 |
| New England Trust Co., trustee | 486 |
| Peter Bent Brigham Hospital | 450 |

The balance of the stock, being 49.3 per cent, was owned by 4,666 different individuals and corporations, none of whom owned as many as 400 shares.

10. From March 1, 1893, up to and including all of the year 1918, the covenants and agreements contained in the said lease were fully performed by the parties thereto. The stockholders and directors of the taxpayer from time to time passed certain resolutions and entered into certain transactions as required by said lease. Abstracts of these resolutions and transactions, as they appear upon the official records of the taxpayer admitted in evidence, are as follows:

(a) At a special meeting of the directors held on Wednesday, February 15, 1893, it was voted to approve and agree to a lease of the railroad property and franchise to the New York, New Haven and Hartford Railroad Company and to the terms thereof.

(b) At a special meeting of the stockholders, held on Tuesday, February 28, 1893, a resolution was adopted sanctioning and confirming the agreement and approving the terms of the 99 year lease for all the taxpayer's property and franchises to New York, New Haven and Hartford Railroad Company.

(c) At the annual meeting of the stockholders, held on Tuesday, September 26, 1893, a resolution of stockholders authorizing the directors to borrow money and issue bonds or notes not to exceed $3,000,000 was passed.

(d) At a meeting of the directors, held on Friday, November 24, 1893, a resolution to issue bonds for $3,000,000 in pursuance of authorization of stockholders was passed.

(e) At a meeting of the directors, held on Friday, December 29, 1893, the president reported to the board that the directors of the N. Y., N. H., & H. R. R. Co. had been furnished a copy of the vote passed authorizing bonds.

(f) On September 29, 1896, the taxpayer entered into an agreement to purchase the Fall River Railroad in which it provided that "the Old Colony Railroad Company, with the assent of the New York, New Haven & Hartford Railroad Company lessee, agrees to accept the above transfer and conveyance and to carry out and perform the terms and conditions above set forth when the same are approved in writing by the Railroad Commissioners of Massachusetts."

(g) A special meeting of the stockholders of the taxpayer was held April 22, 1901, to consider if the stockholders would authorize the directors to locate and build a railroad from a point on the Wrentham Branch in North Attleboro to a connection to the Rhode Island and Massachusetts Railroad at a point near Adamsdale and to issue the necessary stock or bonds to provide therefor, as requested by the New York, New Haven & Hartford Railroad Company.

(h) At a special meeting of the directors, held on Friday, September 8, 1905, it was announced by the president that the New York, New Haven & Hartford Railroad Company had authorized the construction of certain additional tracks.

(i) At a special meeting of the directors, held on Friday, March 2, 1906, it was voted to issue 5,000 shares of new stock to be sold at public auction at the request of New York, New Haven & Hartford Railroad Company.

(j) At the annual meeting of the stockholders, held on September 27, 1910, it was voted to issue eight thousand (8,000) shares of new capital stock, the proceeds to be applied for the purposes mentioned in chapter 463, part II, section 46, of the Massachusetts Acts of 1906, including improvements and additions to property, made or to be made, under the provisions of the lease of the taxpayer to the New York, New Haven & Hartford Railroad Company.

(k) At the annual meeting of the stockholders held September 26, 1911, it was voted to issue 5,000 shares of new capital stock for improvements under the provisions of the lease to the New York, New Haven & Hartford Railroad Company.

(l) At the annual meeting of the stockholders, held September 24, 1912, it was voted to issue 8,000 shares of capital stock for improvements under the provisions of the lease to the New York, New Haven & Hartford Railroad Company.

(m) At a special meeting of the directors, held on Thursday, October 25, 1923, the president submitted to the board a certified copy of the following vote of the board of directors of the New York, New Haven & Hartford Railroad Company, passed at a meeting held on Tuesday, October 23, 1923:

"Voted, That pursuant to the terms of the lease of the Old Colony Railroad Company to this Company, dated February 15th, 1893, this Company requests the Old Colony Railroad Company to issue its bonds in such amount not exceeding $4,500,000, for such term, and at such rate of interest as shall be approved by the Interstate Commerce Commission and the Department of Public Utilities of Massachusetts, for the purpose of providing for the payment at maturity of the present issue of bonds of said Old Colony Railroad Company aggregating a face value of $3,000,000    *    *    *    *"

It was further voted that the board recommend to the stockholders the issuance of $3,000,000 bonds secured by mortgage and they further adopted a form of bonus to the stockholders of the taxpayer.

(n) At a special meeting of the stockholders, held on Thursday, November 8, 1923, authorization was given for the issuance of bonds as recommended by the directors and the mortgaging and pledging the railroad property.

11. The stockholders and directors of the New York, New Haven & Hartford Railroad Co. in their duly authorized meetings from time to time passed certain resolutions and entered into certain transactions as required by said lease. Extracts from these resolutions and transactions, as admitted in evidence, are as follows:

(a) At a meeting of the Board of Directors of the New York, New Haven and Hartford Railroad Company held pursuant to legal notice in the City of New York, N. Y., on Saturday, February 11th, 1893, at which a quorum was present, the following resolution was adopted:

" RESOLVED, That the President be and he is hereby authorized to execute in the name and under the seal of this Company a lease to this Company of the Old Colony Railroad, substantially in form as this day submitted to this Board, and generally to do all proper acts to carry the same into effect."

(b) At a special meeting of the stockholders of the New York, New Haven and Hartford Railroad Company held pursuant to legal notice in the City of New Haven, Connecticut, on Tuesday, April 4th, 1893, the following resolution was adopted:

" RESOLVED, That the lease of the railroad and property of the Old Colony Railroad Company to this Company, dated February 15th, 1893, executed by the Presidents of the parties thereto under the authority of their respective Boards of Directors, and this day submitted to this meeting, be and the same is hereby approved."

(c) At a meeting of the Board of Directors of the New York, New Haven, and Hartford Railroad Company held pursuant to legal notice in the City of New York, N. Y., on Saturday, November 11th, 1893, at which a quorum was present, the following resolution was adopted:

" RESOLVED, That the President be directed to request the Old Colony Railroad Company, in accordance with the terms of the lease, to make lawful issue of bonds in renewal of its funded debt maturing during the next twelve months."

At a meeting of the board of directors of the New York, New Haven & Hartford Railroad Co., held in the City of New York, N. Y., on Saturday, December 9, 1893, a resolution approving the sale of 3,000 shares of stock at auction by the Old Colony Railroad and approving the issue of certain bonds and the sale thereof was adopted.

## DECISION.

The determination of the Commissioner is approved.

## OPINION.

GRAUPNER: The question in this appeal is whether or not the taxpayer is affiliated with the New York, New Haven & Hartford Railroad Co. within the meaning of the provisions of section 240 of the Revenue Act of 1918. The New York, New Haven & Hartford Railroad Co. will be hereinafter referred to as the " New Haven."

The taxpayer claims it is affiliated by reason of the fact that the New Haven owns 44 per cent of the stock and has a 99-year lease of the franchise and property of the taxpayer. The Commissioner contends that the two companies are not affiliated and has refused to permit a consolidated return to be filed for the year 1918.

The pertinent parts of section 240 of the Revenue Act of 1918 read as follows:

Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall  *  *  *  make a consolidated return of net income and invested capital  *  *  *.

(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others  *  *  *.

We must determine whether the New Haven owns directly or controls through closely affiliated interests substantially all the stock of the taxpayer by virtue of its direct ownership of 44 per cent of the stock and the 99-year lease as set forth in the findings of fact. There is no serious dispute as to the facts. The solution of the question involved depends upon the interpretation and meaning of the pertinent words and phrases in the statute and the application of the law to the facts in this particular case. The Board has already held in

several cases that affiliation depends upon the facts and circumstances of each individual case. *Appeal of Isse Koch & Co.*, 1 B. T. A. 624; *Appeal of Huntington & Clearfield Telephone Co.*, 1. B. T. A. 731; *Appeal of Hagerstown Shoe & Legging Co.*, 1 B. T. A. 666.

The Board has interpreted the word "control" in this section of the statute as meaning actual control of voting stock. *Appeal of Isse Koch & Co.*, 1 B. T. A. 624.

It is conceded that only 44 per cent of the taxpayer's stock was owned by the New Haven, so the question of control by direct ownership of the stock is eliminated. The issue narrows down to the question whether or not one corporation by virtue of a 99-year lease, such as in this case, coupled with 44 per cent direct ownership of stock "controls * * * substantially all the stock" of the other corporation.

The principal arguments of the taxpayer that the New Haven controls substantially all of the stock of the Old Colony are as follows:

1. That the lease was not an ordinary lease, but a contract binding the stock of the taxpayer to act or refrain from acting in practically all corporate matters, at the will of the New Haven. That the stockholders not only passed over to the New Haven all the property of the taxpayer, but expressly bound themselves to act during the period of the lease under the control of the New Haven; that the New Haven received the sum total of the principal rights and powers of the taxpayer.

2. That while the record ownership of the majority of stock was in the stockholders of the taxpayer, the real substantial ownership was in the New Haven, as the record owners have parted with and granted to the New Haven all of their most substantial rights as owners.

3. That the meaning of the word "control" should be confined to its plain, usual, and ordinary meaning, and that it does not necessarily mean ownership either direct or indirect; that the form of control in this appeal was control of the stock.

4. That "control through closely affiliated interests" means control by individuals or corporations and other legal entities mutually concerned in accomplishing a common purpose.

5. That the New Haven and the stockholders of the taxpayer are, in fact, "closely affiliated interests."

We have considered the arguments and reasons advanced by the taxpayer, but are unable to subscribe to its legal conclusions. Such conclusions appear inconsistent with certain recognized and well-established legal principles. In effect, we are urged to hold that corporations occupying the relationship of lessee and lessor are affiliated within the meaning of section 240 of the Revenue Act of 1918. We are urged to hold that the entities of stockholders and the corporations are merged for the purposes of the application of this Act. The reasoning of the taxpayer fails to break down the distinction or demarcation between the entities of the corporation and the stock.

The lease in question is between the corporations. One receives the use of all of the property of the other, which corporation, in turn, receives as rental certain dividends on its outstanding stock. The stockholders are not parties to the transaction. The provisions

of the lease are not binding upon the stockholders as such. The stockholders could exercise the privilege of exchanging their stock for New Haven stock, but this was not obligatory.

To hold that the " control " under the facts in this appeal extends to the control of the stock would be too far reaching and would be disregarding the well-recognized distinction between the powers and rights of the corporate entity as distinguished from the rights of the stockholder.

This Board has recognized this distinction in income-tax cases. *Appeal of F. C. Huffman,* 1 B. T. A. 52; *Appeal of Winthrop Ames,* 1 B. T. A. 63; *Appeal of Regal Shoe Co.,* 1 B. T. A. 896; and *Appeal of John K. Greenwood,* 1 B. T. A. 291.

The fact that the New Haven had a lease of the property of the taxpayer, which was legally binding as between the corporations and sweeping in the character of its terms, does not give one " control " over the stock of the other. The owners of the stock still have the rights and powers of stockholders as usually recognized. The New Haven may have the control of the principal assets of the taxpayer in the same manner as any lessee, but, under the terms of the lease, the taxpayer is still the owner.

The taxpayer contends that the lease is no ordinary one but a merger and joining of the property and interests almost as completely as could have been done by a corporate merger. At first glance, the provisions of the lease might seem to grant unusual and extraordinary powers to the lessee over the lessor, but a close analysis of the lease discloses nothing that would distinguish it from an ordinary lease in so far as the legal liabilities and powers of the parties are concerned. In simple words, the lease contains provisions only necessary to give the New Haven full use and enjoyment of the property; to preserve the property in good condition; to insure the necessary formal legal procedure to fund mortgage indebtedness and to make advantageous improvements; to insure the payment of rent equal to 7 per cent of outstanding stock over and above all expenses to the lessor; to insure redelivery to the lessor at the termination of the lease of all property in as good condition as before and including all improvements, and, to give the lessor repossession in case of default in payment of rent, interest on bonded indebtedness, or failure to perform the covenants of the lease. The only unusual or extraordinary features of the lease are the great value, the magnitude, complexity, and public character of the property leased, together with the long term of years.

The records of the meetings of directors and stockholders of the two corporations put in evidence by the taxpayer do not disclose anything that could be construed as " control " over the stock of the taxpayer by the New Haven. A study of the documents shows that the eighteen exhibits cover a period of thirty years and involve but a few transactions, the principal ones of which were the legal steps necessary to execute and ratify the 99-year lease; the funding of a $3,000,000 bonded indebtedness in 1893; a funding of a $4,500,000 bonded indebtedness in 1923; the issuing of 5,000 and 8,000 shares of stock for purposes of improvements and purchase of the branch line. They are, in form, " requests " by the New Haven and a compliance by the taxpayer corporation. They were necessary and proper to preserve and improve the property, and equally advan-

tageous to the lessor. There is nothing in these transactions to warrant the conclusion that control was being exercised over the stock of the lessor. It is not unusual for a lessor to take care of the mortgage indebtedness or to make arrangements with the lessee regarding improvements and the payment therefor.

From our interpretation of the effect of the lease and the transactions thereunder, it will not be necessary for us to consider the other arguments advanced by the taxpayer and the Commissioner.

We are of the opinion that, under the facts and circumstances of this case, the New York, New Haven & Hartford Railroad Co. did not control substantially all of the stock of the taxpayer and that the two corporations were not affiliated under the provisions of section 240 of the Revenue Act of 1918.