*1074 OPINION.
Graupner :
The question in this appeal is whether or not the taxpayer is affiliated with the New York, New Haven & Hartford Railroad Co. within the meaning of the provisions of section 240 of the Revenue Act of 1918. The New York, New Haven & Hartford Railroad Co. will be hereinafter referred to as the “ New Haven.”
The taxpayer claims it is affiliated by reason of the fact that the New Haven owns 44 per cent of the stock and has a 99-year lease of the franchise and property of the taxpayer. The Commissioner contends that the two companies are not affiliated and has refused to permit a consolidated return to be filed for the year 1918.
The pertinent parts of section 240 of the Revenue Act of 1918 read as follows:
Sec. 240. (a) That corporations which are affiliated within the meaning of this section shall * * * make a consolidated return of net income and invested capital * * *.
(b) For the purpose of this section two or more domestic corporations shall be deemed to be affiliated (1) if one corporation owns directly or controls through closely affiliated interests or by a nominee or nominees substantially all the stock of the other or others * * *.
We must determine whether the New Haven owns directly or controls through closely affiliated interests substantially all the stock of the taxpayer by virtue of its direct ownership of 44 per cent of the stock and the 99-year lease as set forth in the findings of fact. There is no serious dispute as to the facts. The solution of the question involved depends upon the interpretation and meaning of the pertinent words and phrases in the statute and 'the application of the law to the facts in this particular case. The Board has already held in *1075 several cases that affiliation depends upon the facts and circumstances of each individual case. Appeal of Isse Koch & Co., 1 B. T. A. 624; Appeal of Huntington & Clearfield Telephone Co., 1 B. T. A. 731; Appeal of Hagerstown Shoe & Legging Co., 1 B. T. A. 666.
The Board has interpreted the word “ control ” in this section of the statute as meaning actual control of voting stock. Appeal of Isse Koch & Co., 1 B. T. A. 624.
It is conceded that only 44 per cent of the taxpayer’s stock was owned by the New Haven, so the question of control by direct ownership of the stock is eliminated. The issue narrows down to the question whether or not one corporation by virtue of a 99-year lease, such as in this case, coupled with 44 per cent direct ownership of stock “ controls * * * substantially all the stock ” of the other corporation.
The principal arguments of the taxpayer that the New Haven controls substantially all of the stock of the Old Colony are as follows:
1. That the lease was not an ordinary lease, but a contract binding the stock of the taxpayer to act or refrain from acting in practically all corporate matters, at the will of the New Haven. That the stockholders not only passed over to the New Haven all the property of the taxpayer, but expressly bound themselves to act during the period of the lease under the control of the New Haven; that the New Haven received the sum total of the principal rights and powers of the taxpayer.
2. That while the record ownership of the majority of stock was in the stockholders of the taxpayer, the real substantial ownership was in the New Haven, as the record owners have parted with and granted to the New Haven all of their most substantial rights as owners.
3. That the meaning of the word “ control ” should be confined to its plain, usual, and ordinary meaning, and that it does not necessarily mean ownership either direct or indirect; that the form of control in this appeal was control of the stock.
4. That “ control through closely affiliated interests ” means control by individuals or corporations and other legal entities mutually concerned in accomplishing a common purpose.
5. That the New Haven and the stockholders of the taxpayer are, in fact, “ closely affiliated interests.”
We have considered the arguments and reasons advanced by the taxpayer, but are unable to subscribe to its legal conclusions. Such conclusions .appear inconsistent with certain recognized and well-established legal principles. In effect, we are urged to hold that corporations occupying the relationship of lessee and lessor are affiliated within the meaning of section 240 of the Revenue Act of 1918. We are urged to hold that the entities of stockholders and the corporations are merged for the purposes of the application of this Act. The reasoning of the taxpayer fails to break down the distinction or demarcation between the entities of the corporation and the stock.
The lease in question is between the corporations. One receives the use of all of the property of the other, which corporation, in turn, receives as rental certain dividends on its outstanding stock. The stockholders are not parties to the transaction. The provisions *1076 of the lease are not binding upon the stockholders as such. The stockholders could exercise the privilege of exchanging their stock for New Haven stock, but this was not obligatory.
To hold that the “ control ” under the facts in this appeal extends to the control of the stock would be toó far reaching and would be disregarding the well-recognized distinction between the powers and rights of the corporate entity as distinguished from the rights of the stockholder.
This Board has recognized this distinction in income-tax cases. Appeal of E. C. Huffman, 1 B. T. A. 52; Appeal of Winthrop Ames, 1 B. T. A. 63; Appeal of Regal Shoe Go., 1 B. T. A. 896; and Appeal of John K. Greenwood, 1 B. T. A. 291.
The fact that the New Haven had a lease of the property of the taxpayer, which was legally binding as between the corporations and sweeping in the character of its terms, does not give one “ control ” over the stock of the other. The owners of the stock still have the rights and. powers of stockholders as usually recognized. The New Haven may have the control of the principal assets of the taxpayer in the same manner as any lessee, but, under the terms of the lease, the taxpayer is still the owner.
The taxpayer contends that the lease is no ordinary one but a merger and joining of the property and interests almost as completely as could have been done by a corporate merger. At first glance, the provisions of the lease might seem to grant unusual and extraordinary powers to the lessee over the lessor, but a close analysis of the lease discloses nothing that would distinguish it from an ordinary lease in so far as the legal liabilities and powers of the parties are concerned. In simple words, the lease contains provisions only necessary to give the New Haven full use and enjoyment of the property; to preserve the property in good condition; to insure the necessary formal legal procedure to fund mortgage indebtedness and to make advantageous improvements; to insure the payment of rent equal to 7 per cent of outstanding stock over and above all expenses to the lessor; to insure redelivery to the lessor at the termination of the lease of all property in as good condition as before and including all improvements, and, to give the lessor repossession in case of default in payment of rent, interest on bonded indebtedness, or failure to perform the covenants of the lease. The only unusual or extraordinary features of the lease are the great value, the magnitude, complexity, and public character of the property leased, together with the long term of years.
The records of the meetings of directors and stockholders of the two corporations put in evidence by the taxpayer do not disclose anything that could be construed as “ control ” over the stock of the taxpayer by the New Haven. A study of the documents shows that the eighteen exhibits cover a period of thirty years and involve but a few transactions, the principal ones of which were the legal steps necessary to execute and ratify the 99-year lease; the funding of a $3,000,000 bonded indebtedness in 1893; a funding of a $4,500,000 bonded indebtedness in 1923; the issuing of 5,000 and 8,000 shares of stock for purposes of improvements and purchase of the branch line. They are, in form, “ requests ” by the New Haven and a compliance by the taxpayer corporation. They were necessary and proper to preserve and improve the property, and equally advan *1077 tageous to the lessor. There is nothing in these transactions to warrant the conclusion that control was being exercised over the stock of the lessor. It is not unusual for a lessor to take care of the mortgage indebtedness or to make arrangements with the lessee regarding improvements and the payment therefor.
From our interpretation of the effect of the lease and the transactions thereunder, it will not be necessary for us to consider the other arguments advanced by the taxpayer and the Commissioner.
We are of the opinion that, under the facts and circumstances of this case, the New York, New Haven & Hartford Railroad Co. did not control substantially all of the stock of the taxpayer and that the two corporations were not affiliated under the provisions of section 240 of the Revenue Act of 1918.